UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No. 1:26-cv-10842-JEK

Andre Bisasor, Natalie Anderson, Plaintiffs,

v.

FedEx Office and Print Services, Inc., FedEx Corporation, Mike Doiron, Eric Doe, Defendants.

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiffs Andre Bisasor ("Bisasor") and Natalie Anderson ("Anderson") (collectively, "Plaintiffs"), by and through this First Amended Complaint, bring this action against Defendants FedEx Office and Print Services, Inc. ("FedEx Office"), FedEx Corporation ("FedEx Corp." or "FedEx") (collectively, the "FedEx Defendants"), Mike Doiron ("Doiron"), and Eric Doe ("Doe") (collectively, "Defendants"), and allege the following based upon personal knowledge, information, and belief.
2. This First Amended Complaint is filed as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), within twenty-one (21) days of service of Defendants' Motion to Dismiss (ECF No. 9), filed and served on February 19, 2026. No leave of court is required. *See* Fed. R. Civ. P. 15(a)(1)(B).
3. This amended complaint supersedes the original complaint and renders it of no legal effect. It moots any pending motion to dismiss directed at the original complaint. *See Negron v. Turco*, 253 F. Supp. 3d 361, 364 (D. Mass. 2017).
4. NB: The term "Plaintiffs" refers to both Bisasor and Anderson. Where factual assertions apply specifically to one plaintiff, that plaintiff will be identified by name. Anderson is added as a plaintiff because she was present during, witnessed, and was herself subjected to the discriminatory and retaliatory conduct alleged herein, and she also is a signatory to the signed agreements with the FedEx corporate defendants.

## I. PRELIMINARY STATEMENT

5. This is an action for damages arising from Defendants' racially motivated discrimination, retaliation, harassment, and hostile treatment of Plaintiffs, two African American customers, at a FedEx Office retail store located at 187 Dartmouth Street, Boston, Massachusetts, on or about February 4 through February 6, 2019, and Defendants' subsequent refusal to identify, address/investigate, or discipline the offending employee, and refusal/continual refusal to provide the identity of said employee when requested, including via subsequent calls to the FedEx Corporate offices, as well as during the summer of 2019, and telephone calls in the Fall of 2019, and up until the present time in March 2026.
6. Plaintiffs assert claims for breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, violation of the Massachusetts Equal Rights Act ("MERA"), intentional infliction of emotional distress ("IIED"), defamation, assault, violation of Massachusetts General Laws Chapter 93A, negligence, negligent hiring/training/supervision/retention, unjust enrichment, and violation of the Massachusetts public accommodation law.
7. The Section 1981 claim, which was asserted in the original complaint, is not reasserted in this amended complaint and is hereby eliminated from the amended complaint.

## II. PARTIES
### A. Plaintiffs

8. Plaintiff Andre Bisasor is an individual residing in Massachusetts. He is an African American male and a citizen of the Commonwealth of Massachusetts.
9. Plaintiff Natalie Anderson is the wife of Bisasor and also resides in Massachusetts. She is an African American female and a citizen of the Commonwealth of Massachusetts. Anderson was present during some of the events at the FedEx Office store and was herself subjected to discriminatory and retaliatory conduct by Defendant Doe.

### B. Defendant FedEx Office and Print Services, Inc.

10. Defendant FedEx Office and Print Services, Inc. ("FedEx Office") is a corporation organized under the laws of Texas with a principal place of business at 7900 Legacy Drive, Plano, Texas 75024. FedEx Office is a wholly owned subsidiary of FedEx Corporation.
11. FedEx Office is registered as a foreign corporation with the Massachusetts Secretary of State and is authorized to do business in Massachusetts. FedEx Office has appointed CT Corporation System, located at 155 Federal Street, Suite 700, Boston, Massachusetts 02110, as its registered agent for service of process.
12. FedEx Office owns and operates the retail store at 187 Dartmouth Street, Boston, Massachusetts 02116, where the events giving rise to this action occurred.
13. FedEx Office operates approximately 50 or more retail locations throughout Massachusetts, including in Suffolk, Middlesex, Essex, Worcester, Bristol, and Norfolk counties.
14. FedEx Office provides retail access to shipping, packing, copying, and printing services to the general public. Its stores are places of public accommodation under Massachusetts law.
15. FedEx Office chose to establish a significant business presence in Massachusetts, operate retail storefronts in Massachusetts, hire employees in Massachusetts, solicit Massachusetts customers, collect revenue from Massachusetts customers, and utilize Massachusetts infrastructure, roads, and courts. Having done so, it cannot claim immunity from the jurisdiction of Massachusetts courts when a Massachusetts resident is injured in a Massachusetts store by a Massachusetts-based employee.

## C. Defendant FedEx Corporation

16. Defendant FedEx Corporation ("FedEx Corp.") is a Delaware corporation with its principal place of business in Memphis, Tennessee.
17. FedEx Corp. is registered as a foreign corporation with the Massachusetts Secretary of State and has appointed CT Corporation System, located at 155 Federal Street, Suite 700, Boston, Massachusetts 02110, as its registered agent for service of process.
18. FedEx Corp. is the ultimate parent company of FedEx Office. FedEx Corp. sets company-wide policies, including anti-discrimination, anti-retaliation, and customer service policies, such as the "Purple Promise" and Code of Conduct, that govern FedEx Office store operations and employee conduct.
19. FedEx Corp. owns and operates approximately 1,800 stores nationwide, including over 50 in Massachusetts, through its subsidiaries. FedEx Corp. derives substantial revenue from its Massachusetts operations and from interstate commerce flowing through Massachusetts.
20. FedEx Corp. has substantial, systematic, and continuous contacts with Massachusetts. It is registered to do business here, maintains a registered agent here, its subsidiaries operate over 50 retail locations here, it hires employees here, owns or leases real estate here, pays taxes here, regularly uses Massachusetts courts, roads, and infrastructure, and receives tax incentives and benefits from Massachusetts.
21. FedEx Corp. chose to come to Massachusetts to do business and offer services locally. It chose to set up shop in Massachusetts communities, including in Boston. Massachusetts has a compelling interest in addressing harms to its residents caused by merchants who are permitted to operate within its borders. FedEx Corp. cannot hide behind its state of incorporation to avoid accountability for injuries caused by its operations in Massachusetts.
22. This Court has personal jurisdiction over FedEx Corp. under Mass. Gen. Laws ch. 223A, § 3 (the Massachusetts long-arm statute), because FedEx Corp. transacts business in Massachusetts, maintains a regular place of business here through its subsidiaries, and the claims arise from FedEx Corp.'s acts and omissions within the Commonwealth. Alternatively, this Court has general jurisdiction because FedEx Corp.'s contacts with Massachusetts are so substantial, systematic, and continuous as to render it essentially at home here.
23. FedEx Corp. is vicariously liable for the acts and omissions of FedEx Office and its employees, including Doe and Doiron, under the doctrines of respondeat superior, agency, and alter ego. FedEx Corp. directly controls the policies, standards, and operations of FedEx Office stores, including employee hiring, training, supervision, and discipline.

## D. Defendant Mike Doiron

24. Defendant Mike Doiron ("Doiron") is an individual who resides in the Commonwealth of Massachusetts.

2

25. At all times relevant to this complaint, Doiron was the store manager of the FedEx Office retail location at 187 Dartmouth Street, Boston, Massachusetts 02116.
26. As store manager, Doiron was responsible for the hiring, training, supervision, and discipline of store employees, including Defendant Doe.
27. Doiron is subject to this Court's personal jurisdiction because he resides in Massachusetts, worked in Massachusetts, and the acts and omissions giving rise to this action occurred in Massachusetts.
28. Upon information and belief, Doiron failed to adequately train, supervise, and discipline Doe, and failed to respond to plaintiffs' complaints about Doe or address them in any way, and failed to investigate or take corrective action after receiving complaints about Doe's discriminatory and retaliatory conduct toward Plaintiffs.

### E. Defendant Eric Doe

29. Defendant Eric "Doe" is an individual who, upon information and belief, resides in the Commonwealth of Massachusetts and works (or worked) for FedEx Office at the 187 Dartmouth Street location in Boston.
30. "Eric" is the first name of this employee. Plaintiffs do not currently know the full name of this employee. The state court authorized limited discovery to identify Eric Doe by order dated August 28, 2025. Despite this order, defense counsel Patrick M. Curran of Ogletree Deakins confirmed by email on February 27, 2026, that his clients would not voluntarily provide Eric Doe's identity.
31. Eric Doe is subject to this Court's personal jurisdiction because he resides in Massachusetts, works in Massachusetts, and all acts giving rise to this complaint occurred in Massachusetts. The Civil Cover Sheet filed in this case identifies Doe as residing in Massachusetts. Preliminary research identifies multiple individuals named Eric who work or have worked for FedEx in Massachusetts.
32. Doe was the sole employee on duty at the FedEx Office store during the nighttime hours when the events at issue took place. He was acting within the scope of his employment at all relevant times.

### III. NOTE ON JURISDICTION AND VENUE

33. This Federal Court does not have subject matter jurisdiction under diversity jurisdiction because there is/was no complete diversity of citizenship between Plaintiffs (Massachusetts citizens) and the Defendants. Furthermore, because the sole federal claim is eliminated, then the Court does not have federal jurisdiction either. The case therefore must be remanded to state court under Royal Canin precedent.
34. The state of Massachusetts does have personal jurisdiction over all Defendants. FedEx Office and FedEx Corp. are registered to do business in Massachusetts, maintain registered agents in Massachusetts, operate retail locations throughout Massachusetts, and the events giving rise to this complaint occurred at a FedEx Office store in Boston, Massachusetts. Doiron and Doe reside and work in Massachusetts.
35. The defendants own
    a. Real estate in Massachusetts
    b. Do business in Massachusetts
    c. Regularly use courts in Massachusetts
    d. Regularly use roads and infrastructure in Massachusetts
    e. Get tax breaks and incentives from Massachusetts
    f. Hires employees in Massachusetts
    g. Buys real estate in Massachusetts
    h. Pay taxes in Massachusetts
    i. Employees and managers live in Massachusetts
36. The state of Massachusetts as venue is proper in Suffolk county, Boston, where the case was first filed before removal to this court by the defendants. A substantial part of the events giving rise to the claims occurred in this district, and Defendants FedEx Office and FedEx Corp. are subject to personal jurisdiction in Suffolk county.

### IV. FACTUAL ALLEGATIONS
### A. Plaintiffs as Loyal FedEx Customers

37. Plaintiffs are long-time, loyal, repeat customers of FedEx. Over the years, they have spent thousands of dollars with FedEx at numerous store locations throughout Massachusetts and in other states.

3

38. Plaintiffs registered for FedEx accounts, both personal and business, after being induced by FedEx's promises, including: "**your account number gives you convenient access to the quality services you need. Use your account number for purchases online or at more than 1,900 FedEx Office locations, including hundreds that operate 24 hours a day, 7 days a week.**"
39. FedEx also promised benefits including: **registering preferences and contact information, saving documents to the FedEx online platform, tracking orders and re-orders, opting to receive promotions/updates, and earning My FedEx Rewards.**
40. These promises constituted the terms of an offer that Plaintiffs accepted by registering for accounts and patronizing FedEx stores, creating binding contractual obligations.

### B. The FedEx Store at 187 Dartmouth Street, Boston

41. FedEx Office operates a store at 187 Dartmouth Street, Boston, MA 02116 (the "Store"). At relevant times, the Store was open 24 hours a day, 7 days a week, one of only a handful of such stores in Massachusetts.
42. Mike Doiron was the store manager of the Store at the time of the events alleged herein.

### C. The Events of February 4-6, 2019

43. On or about February 4, 2019, Bisasor visited the Store to purchase printing, copying, and shipping services in connection with a large project. He arrived during the nighttime, between approximately 9pm and 11pm.
44. Bisasor took a seat at one of several cubicle workstations and began working on his project. There was only one other customer in the store, a white male who was also seated at a nearby cubicle.
45. Defendant Eric Doe, the sole employee in the Store, approached the white customer and politely asked whether he needed assistance. The white customer said he did not.
46. Doe then approached Bisasor and, in a scoffing manner, told Bisasor that he was not allowed in the Store, that he was loitering, and that he had to leave. Doe treated Bisasor as though he were a homeless person seeking shelter, despite the fact that Bisasor was dressed as a normal customer, no different from the white male customer.
47. Bisasor informed Doe that he was a regular customer, and not a homeless loiterer, that he was there to purchase printing, copying, and shipping services, and that he was working on a large project. The only difference between the treatment of Bisasor and the white customer was race: Bisasor is Black; the other customer is white. Both were similarly situated, engaged in similar activities. Doe's racially disparate judgment was almost instantaneous, based solely on Plaintiffs' race.
48. Bisasor directly raised concerns to Doe that Doe was singling him out and discriminating against him because of his race. Doe became visibly upset and agitated, was non-responsive to Bisasor's concerns, and walked away.
49. Doe engaged in a series of retaliatory and hostile acts intended to drive Bisasor out of the Store:
    (a) After the white customer(s) left and Plaintiffs were the only remaining customers, Doe decreased the store temperature to an extremely uncomfortable level during the middle of winter in February, forcing Plaintiffs to put on their winter coats while still shivering. Bisasor later became ill after being so subjected.
    (b) Doe ran a loud vacuum cleaner immediately next to Plaintiffs' work area for over two hours, leaving it running unattended to continue the disturbance. He more than once ran the vacuum towards plaintiffs in a menacing way as though he intended to hit the plaintiffs' feet and legs with the vacuum cleaner, which caused plaintiffs to recoil from these acts.
    (c) Doe intruded into Plaintiffs' work area, aggressively cleaning around and between them, moving their belongings in an antagonistic manner, including while plaintiffs were holding their belongings, and doing so repeatedly with the clear intent to annoy and harass.
    (d) Doe refused to assist Plaintiffs with the copying machine when it malfunctioned and caused misprints.
    (e) Doe engaged in other passive-aggressive and uncooperative behavior.
50. These retaliatory acts occurred on February 4, 2019, continued on the evening of February 5, 2019, and into the early morning of February 6, 2019, when Bisasor returned with his wife Anderson to complete the project.

4

51. Anderson, who is also African American, became a target of Doe's retaliatory conduct upon joining Bisasor at the Store.
52. Doe's conduct made the experience so unbearable that Plaintiffs were forced to leave the Store before completing their printing, copying, and shipping work.
53. As Bisasor was leaving the Store, Doe hurled hostile expletives and extremely offensive derogatory racial slurs and discriminatory epithets at Bisasor while speaking loudly and angrily. These slurs were so disgusting and shocking that Plaintiffs will state them at subsequent stages of this litigation but reserve the specific language for discovery or trial.
54. Doe acted in an intimidating and threatening manner while directing these slurs at Bisasor. Doe's words, actions, and demeanor constituted an assault, they placed Plaintiffs in reasonable apprehension of imminent harmful or offensive contact. Both Bisasor and Anderson felt very threatened and scared by Doe's open hostility.
55. Doe also locked Bisasor out of the Store, preventing him from re-entering while he was loading his vehicle with his work materials/belongings, and in the process of leaving.
56. Doe's conduct was motivated by racial animus, was willful, wanton, malicious, and outrageous, and was intended to punish Bisasor for being Black and for having the audacity to raise concerns about racial discrimination.

### D. Complaints to FedEx and Refusal to Act

57. Following the events, Bisasor contacted FedEx's corporate office on two occasions to report Doe's conduct. The corporate office said they would note the complaint and directed Bisasor to contact the local store. On information and belief, FedEx's corporate office took no action.
58. Bisasor also called the local FedEx Store on two occasions and reported the complaint to a store employee. He asked to speak with the store manager (Doiron), who was unavailable, and left a voicemail summarizing the complaint. Bisasor did not receive a return call. On information and belief, neither the store nor Doiron took any action to investigate, follow up, or discipline Doe.
59. In the fall of 2019, Bisasor telephoned FedEx and specifically requested the full name and identity of Eric Doe so that he could pursue legal remedies. FedEx refused to provide Eric Doe's identity.
60. On information and belief, FedEx's refusal to disclose Doe's identity was part of a deliberate pattern of concealing the identity of the offending employee to shield him and FedEx from accountability.
61. It should be noted that, in a pattern/manner consistent with the above, Defense counsel Patrick M. Curran confirmed by email on February 27, 2026, that his clients would not voluntarily provide Eric Doe's identity, even after the Suffolk Superior Court had authorized limited discovery for this purpose on August 28, 2025.

### E. FedEx's Policies, Promises, and Representations

62. FedEx publishes and holds itself out to customers as bound by specific policies, including its "Purple Promise," Code of Conduct, non-retaliation policy, and equal opportunity and anti-harassment policy.
63. The Purple Promise states: "At FedEx we are committed to the Purple Promise: **I will make every FedEx experience outstanding. This commitment sets the bar for excellence, helping us earn the trust and loyalty of our team members, customers and communities...When it comes to integrity and business conduct - EVERY ACTION MATTERS!**"
64. FedEx's non-retaliation policy states: "FedEx prohibits retaliation against anyone who reports a known or suspected violation in good faith."
65. FedEx's equal opportunity and anti-harassment policy states: "We are committed to equal opportunity, fairness, respect and inclusion and do not tolerate discrimination or harassment based on race..."
66. These published policies, terms, guidelines, and representations constituted promises upon which Plaintiffs reasonably and foreseeably relied in choosing to patronize FedEx stores and register for FedEx accounts.
67. FedEx breached every one of these promises when Doe discriminated against and retaliated against Plaintiffs, and when FedEx, FedEx Office, and Doiron failed to investigate, discipline, or take any corrective action.

### F. FedEx's Failure to Train, Supervise, Investigate, and Discipline

68. On information and belief, FedEx defendants failed to adequately train their staff, including Doe, on anti-discrimination policies and compliance with state and federal civil rights laws.
69. FedEx defendants failed to adequately supervise store employees, including Doe, to ensure compliance with anti-discrimination and anti-retaliation policies.
70. FedEx defendants failed to investigate Plaintiffs' complaints despite receiving notice on multiple occasions.
71. FedEx defendants failed to discipline Doe despite receiving complaints about his racially discriminatory and retaliatory conduct.
72. Doiron, as store manager, had a duty to hire, train, supervise, and discipline store employees under his management, and he breached that duty.
73. FedEx defendants' failures to train, supervise, investigate, and discipline were willful, reckless, and demonstrated deliberate indifference to the rights of Plaintiffs and other customers of color.

### V. AMENDMENT AS OF RIGHT

74. This First Amended Complaint is filed as of right under Federal Rule of Civil Procedure 15(a)(1)(B), within twenty-one days of Defendants' service of their Motion to Dismiss on February 19, 2026.
75. An amended complaint supersedes the original complaint and renders it of no legal effect. The pending Motion to Dismiss (ECF No. 9) directed at the original complaint is mooted by this filing. See Negron v. Turco, 253 F. Supp. 3d 361, 364 (D. Mass. 2017); see also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed.) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent.").
76. Pro se complaints are entitled to liberal construction. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### VI. COUNTS
### COUNT I - BREACH OF CONTRACT
**(Against All Defendants)**

77. Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.
78. A binding contract existed between Plaintiffs and the FedEx Defendants. This contract was formed when Plaintiffs registered for FedEx accounts and agreed to patronize FedEx stores in exchange for the services, benefits, and protections promised by FedEx, including the promises set forth in FedEx's terms of service, policies, and representations.
79. The essential elements of contract formation are present: (a) FedEx made an offer through its published terms, policies, and representations; (b) Plaintiffs accepted by registering for accounts, providing consideration in the form of payments for services, and patronizing FedEx stores; (c) there was a bargained-for exchange; Plaintiffs paid for services and FedEx promised quality service free from discrimination; (d) there was no revocation of the offer prior to acceptance; (e) there was no mistake vitiating the contract.
80. FedEx's published policies, including its anti-discrimination policy, non-retaliation policy, Purple Promise, and Code of Conduct, constituted express and implied terms of the contract between Plaintiffs and Defendants. These policies were published, advertised, and disseminated to customers as inducements to patronize FedEx stores.
81. Plaintiffs, as retail customers who entered FedEx's store and purchased services, had a contractual relationship governed by these terms. Under the Uniform Commercial Code and Massachusetts common law, when a merchant holds itself out to the public with specific terms and a customer accepts by patronizing the establishment and paying for services, a contract is formed.
82. Defendants breached this contract by: (a) discriminating against Plaintiffs on the basis of race; (b) retaliating against Plaintiffs for raising concerns about discrimination; (c) refusing to provide services on equal terms; (d) failing to follow their own anti-discrimination and anti-retaliation policies; (e) failing to investigate Plaintiffs' complaints; (f) failing to discipline the offending employee; and (g) refusing to identify the offending employee.
83. As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages including emotional distress, humiliation, loss of use of the store, lost time, and other consequential damages.

## COUNT II - PROMISSORY ESTOPPEL
**(Against All Defendants)**

84. Plaintiffs re-allege and incorporate all preceding paragraphs.
85. FedEx Defendants made clear, definite, and unambiguous promises to Plaintiffs through their published policies, terms of service, Purple Promise, Code of Conduct, and anti-discrimination and anti-retaliation policies, specifically, that all customers would be treated equally, fairly, and with dignity regardless of race, and that FedEx would not tolerate discrimination or retaliation.
86. Plaintiffs reasonably and foreseeably relied on these promises in choosing to register for FedEx accounts, patronize FedEx stores, and spend thousands of dollars on FedEx services over many years.
87. Defendants failed to honor their promises. In reliance on these promises, Plaintiffs visited the Store and were subjected to racial discrimination, retaliation, harassment, and hostile treatment.
88. Injustice can only be avoided by enforcing these promises. Plaintiffs suffered substantial harm as a direct result of their reasonable reliance on Defendants' promises.

## COUNT III - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(Against All Defendants)**

89. Plaintiffs re-allege and incorporate all preceding paragraphs.
90. Under Massachusetts law, every contract implies a covenant of good faith and fair dealing. Lechoslaw v. Bank of N.A., 575 F. Supp. 2d 286, 296-97 (D. Mass. 2008). This covenant requires that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other to receive the fruits of the contract." Id.
91. Defendants violated this covenant by engaging in discriminatory and retaliatory conduct that destroyed Plaintiffs' ability to receive the benefits of their contractual relationship with FedEx, including equal access to services, a discrimination-free environment, and the protections promised by FedEx's policies.
92. As a direct and proximate result, Plaintiffs have suffered damages.

## COUNT IV - VIOLATION OF THE MASSACHUSETTS EQUAL RIGHTS ACT (MERA)
**(Against All Defendants)**

93. Plaintiffs re-allege and incorporate all preceding paragraphs.
94. MERA, Mass. Gen. Laws ch. 93, § 102, guarantees all persons within the Commonwealth the same rights enjoyed by white male citizens to make and enforce contracts and to the full and equal benefit of all laws for the security of persons and property. This is the state counterpart to 42 U.S.C. § 1981.
95. Bisasor is an African American male; Anderson is an African American female. Both are members of a protected class under Mass. Const. amend. CXIV and MERA.
96. Defendants denied Plaintiffs the use and enjoyment of the benefits, privileges, terms, and conditions that they extend to other similarly situated customers, on the basis of race.
97. Defendants subjected Plaintiffs to discrimination in violation of MERA by: denying equal service, retaliating against Plaintiffs for opposing discrimination, refusing to investigate complaints, and concealing the identity of the offending employee.
98. Defendants acted knowingly and with reckless indifference to Plaintiffs' rights.
99. The FedEx Defendants are vicariously liable for Doe's actions under respondeat superior, as Doe acted within the scope of his employment. Doiron is liable for his failure to supervise and discipline.
100. Plaintiffs are entitled to all legal and equitable remedies under MERA, including compensatory and punitive damages, injunctive relief, attorneys' fees/costs, and other appropriate relief. Mass. Gen. Laws ch. 93, §103.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
**(Against All Defendants)**

101. Plaintiffs re-allege and incorporate all preceding paragraphs.

102. To prevail on IIED, a plaintiff must show: (1) defendants intended to cause, or should have known their conduct would cause, emotional distress; (2) defendants' conduct was extreme and outrageous; (3) defendants' conduct caused distress; and (4) plaintiff suffered severe distress. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).
103. Defendants' conduct was extreme and outrageous, beyond all bounds of decency, and utterly intolerable in a civilized community. See Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 596 (2001). Specifically:
    (a) Doe's racially motivated decision to tell Bisasor, and only Bisasor, that he was not allowed in the Store and was "loitering," while offering assistance to the similarly situated white customer;
    (b) Doe's deliberate lowering of the store temperature to freezing levels during a cold winter night, forcing Plaintiffs to put on winter coats while shivering;
    (c) Doe's continuous running of a loud vacuum cleaner next to Plaintiffs' workspace for over two hours;
    (d) Doe's aggressive, antagonistic intrusion into Plaintiffs' work area, moving their belongings;
    (e) Doe's refusal to assist Plaintiffs with malfunctioning equipment;
    (f) Doe's hurling of extremely offensive racial slurs and discriminatory epithets at Bisasor in a loud, angry, intimidating, and threatening manner;
    (g) Doe's locking Plaintiffs out of the Store;
    (h) Defendants' refusal to investigate, discipline, or identify Doe.
104. Doe was on an extreme power trip, bent on exerting oppressive dominance over Plaintiffs, subjugating them to extreme hostility, and assaulting their dignity.
105. Defendants' conduct was intentional, malicious, willful, and intended to inflict harm. Defendants knew or should have known that their conduct would cause severe emotional distress.
106. Plaintiffs have suffered severe emotional distress, including trauma, anxiety, stress, sleep loss, emotional upset, and humiliation, as a direct result of Defendants' conduct.

## COUNT VI - DEFAMATION
### (Against Doe and the FedEx Defendants)

107. Plaintiffs re-allege and incorporate all preceding paragraphs.
108. Doe made false, defamatory statements about Bisasor by loudly and publicly accusing Bisasor of being a loitering malingering homeless person who was loitering in the Store, and by directing extremely offensive racial slurs and epithets at Bisasor.
109. These statements were made in the presence of at least one other customer and were heard by others. They were statements of fact (that Bisasor was not a legitimate customer but a homeless loiterer) that were demonstrably false, Bisasor was a paying customer with a FedEx account working on a legitimate project.
110. These defamatory statements were made with actual malice and/or reckless disregard for the truth, as Doe knew or should have known that Bisasor was a legitimate customer.
111. The statements exposed Bisasor to hatred, contempt, ridicule, and damaged his reputation. As a direct result, Bisasor has suffered damages.
112. The FedEx Defendants are vicariously liable for Doe's defamatory statements made within the scope of his employment.

## COUNT VII - ASSAULT
### (Against Doe and the FedEx Defendants)

113. Plaintiffs re-allege and incorporate all preceding paragraphs.
114. Doe's conduct, including his loud, angry, intimidating, and threatening manner while hurling racial slurs and epithets at Plaintiffs, his aggressive physical behavior in and around Plaintiffs' workspace, and his locking Plaintiffs out of the Store, placed Plaintiffs in reasonable apprehension of imminent harmful or offensive contact.
115. Doe intended to place Plaintiffs in such apprehension, or acted with reckless disregard for the likelihood that his conduct would do so.
116. Plaintiffs suffered harm as a direct result, including fear, anxiety, and emotional distress.
117. The FedEx Defendants are vicariously liable for Doe's assault committed within the scope of his employment.

## COUNT VIII - BATTERY
### (Against Doe and the FedEx Defendants)

118. Plaintiffs re-allege and incorporate all preceding paragraphs. 143. Doe intentionally made harmful or offensive contact with Plaintiffs' persons by aggressively intruding into their personal workspace, physically moving their belongings, and locking Bisasor out of the Store while he was in the immediate vicinity of the door — each act constituting an unpermitted, offensive touching or contact with Plaintiffs' person or effects closely connected to their person. 144. Doe's conduct was intentional, unwanted, and offensive to a reasonable person, and was motivated by racial animus and a desire to intimidate, harass, and punish Plaintiffs. 145. Under Massachusetts law, battery encompasses any intentional, unpermitted, offensive contact, and contact with objects closely identified with a person's body qualifies as contact with the person. See Commonwealth v. Burke, 390 Mass. 480, 482 (1983). 146. The FedEx Defendants are vicariously liable for Doe's battery committed within the scope of his employment, and Plaintiffs have suffered physical and emotional harm as a direct result.

## COUNT IX - VIOLATION OF MASS. GEN. LAWS CH. 93A
### (Against FedEx Office and FedEx Corporation)

119. Plaintiffs re-allege and incorporate all preceding paragraphs.
120. Mass. Gen. Laws ch. 93A, § 2 prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.
121. The FedEx Defendants are engaged in trade or commerce within Massachusetts.
122. The FedEx Defendants engaged in unfair and deceptive acts and practices by: (a) publishing anti-discrimination and customer service policies they had no intention of enforcing; (b) inducing customers like Plaintiffs to patronize FedEx stores based on false promises; (c) tolerating and concealing racially discriminatory conduct by employees; (d) refusing to investigate complaints of discrimination; (e) refusing to identify the offending employee despite a court order authorizing discovery; and (f) engaging in a pattern of deception designed to shield themselves from accountability.
123. Plaintiffs sent a demand letter as required by Mass. Gen. Laws ch. 93A, § 9(3), prior to filing this amended complaint.
124. Plaintiffs are entitled to actual damages or statutory damages of $25, whichever is greater, and up to treble damages if the Court finds the violations were willful or knowing. Mass. Gen. Laws ch. 93A, § 9.

## COUNT X - NEGLIGENCE AND NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION
### (Against FedEx Office, FedEx Corporation, and Doiron)

125. Plaintiffs re-allege and incorporate all preceding paragraphs.
126. The FedEx Defendants and Doiron owed a duty of care to Plaintiffs as business invitees to provide a safe, non-discriminatory, and non-hostile environment.
127. The FedEx Defendants and Doiron breached their duty of care by: (a) negligently hiring Doe without adequate vetting; (b) negligently failing to train Doe on anti-discrimination policies and laws; (c) negligently failing to supervise Doe; (d) negligently retaining Doe after receiving complaints; (e) negligently failing to investigate Plaintiffs' complaints; and (f) negligently failing to discipline Doe.
128. As a direct and proximate result of these breaches, Plaintiffs suffered damages.

## COUNT XI - VIOLATION OF THE MASSACHUSETTS PUBLIC ACCOMMODATION LAW
### (Against All Defendants)

129. Plaintiffs re-allege and incorporate all preceding paragraphs.
130. The Massachusetts Public Accommodation Law, Mass. Gen. Laws ch. 272, §98, prohibits any distinction, discrimination, or restriction on account of race in admission to or treatment in a place of public accommodation.
131. FedEx Office stores are places of public accommodation as defined by Mass. Gen. Laws ch. 272, § 92A.
132. Defendants discriminated against and retaliated against Plaintiffs in a place of public accommodation on the basis of race, in violation of Mass. Gen. Laws ch. 272, §98.

133. Plaintiffs are entitled to all remedies available under the statute.

## COUNT XII - UNJUST ENRICHMENT
### (Against All Defendants)

134. Plaintiffs re-allege and incorporate all preceding paragraphs.
135. In the alternative, Defendants received a substantial monetary benefit from Plaintiffs in the form of services paid for by Plaintiffs.
136. Due to Defendants' gross violations of their own policies and the law, Plaintiffs were subjected to mistreatment, discrimination, retaliation, and hostile treatment while paying for services.
137. Defendants were unjustly enriched by retaining monies paid by Plaintiffs for services that were inferior, hostile, and discriminatory.
138. It would be inequitable for Defendants to retain these monies under the circumstances.

## VII. PRAYER FOR RELIEF

139. WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:
(a) Enter judgment in Plaintiffs' favor and against Defendants on all counts;
(b) Award Plaintiffs compensatory damages in an amount to be determined at trial, including but not limited to damages for emotional distress, humiliation, degradation, loss of enjoyment, and other consequential damages;
(c) Award Plaintiffs statutory damages as provided by law;
(d) Award Plaintiffs punitive and/or exemplary damages against all Defendants in an amount sufficient to deter future misconduct;
(e) Award Plaintiffs treble damages under Mass. Gen. Laws ch. 93A;
(f) Award Plaintiffs pre-judgment and post-judgment interest at the applicable legal rates;
(g) Award Plaintiffs costs of suit and reasonable attorneys' fees where authorized by law;
(h) Grant equitable and injunctive relief as the Court deems just and appropriate;
(i) Grant a pro se liberal construction to this pleading as required or necessary under Haines v. Kerner, 404 U.S. 519 (1972);
(j) Order such other and further relief as this Court deems just, equitable, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor, Pro Se
101 Middlesex Turnpike, #270
Burlington, MA 01803
Email: quickquantum@aol.com

/s/ Natalie Anderson
Natalie Anderson, Pro Se
101 Middlesex Turnpike, #270
Burlington, MA 01803
Email: liberty_6@msn.com

Dated: March 12, 2026

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2026, I filed the foregoing First Amended Complaint and Demand for Jury Trial via the Court's CM/ECF system, which will send notification of such filing to all counsel of record, including:

Patrick M. Curran, Esq.
Mariah Micca, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Email: patrick.curran@ogletree.com

/s/ Andre Bisasor
Andre Bisasor