**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ANDRE BISASOR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-10842-JEK |
| | ) | |
| FEDEX OFFICE AND PRINT SERVICES, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT FEDEX OFFICE AND PRINT SERVICES, INC.'S MOTION TO DISMISS</u>

Respectfully submitted,

**FEDEX OFFICE AND PRINT SERVICES, INC.**

By its attorneys,

*/s/ Patrick M. Curran, Jr.*
Patrick M. Curran, Jr. (BBO #659322)
Mariah K. Micca (BBO #711437)
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: (617) 994-5700
patrick.curran@ogletreedeakins.com
mariah.micca@ogletreedeakins.com

Dated:  March 26, 2026

By accompanying Motion, Defendant FedEx Office and Print Services, Inc. ("FedEx Office") seeks an order dismissing Plaintiffs Andre Bisasor and Natalie Anderson's First Amended Complaint and Demand for Jury Trial (the "Amended Complaint").[1] More than seven years after Plaintiffs allegedly visited the FedEx store located at 187 Dartmouth St., Boston, MA and nearly three years after Bisasor initiated this action, Plaintiffs filed an Amended Complaint in which they (1) added Anderson as a Plaintiff, (2) added Michael Doiron ("Doiron") as a Defendant, (3) removed the federal statutory cause of action (for alleged violation of Section 1981) that Bisasor had asserted in the original Complaint, and (4) added five additional causes of action. Plaintiffs' dilatory amendment to Bisasor's original Complaint improperly purports to add parties to this action and fails to cure the significant defects that existed in his original Complaint. Thus, dismissal of Plaintiffs' Amended Complaint is warranted.

As we explain below, the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Anderson is improperly named as a Plaintiff and because, even if Bisasor had followed the Rules in seeking to add her as a party, Plaintiffs collectively have failed to state a claim on which relief can be granted in the Amended Complaint. Foremost, based on the allegations of the Amended Complaint, all of the purported causes of action that Bisasor and Anderson (who are proceeding *pro se* in this action) have attempted to assert in the Amended Complaint are barred by the applicable statutes of limitations. In addition, with respect to several of the purported causes of action asserted—including nearly all of the newly-asserted claims— Bisasor and Anderson fail to allege facts sufficient to state a claim for relief. Accordingly, the Court should enter an order dismissing the Amended Complaint for failure to state a claim on which relief can be granted.

---

[1] FedEx Office understands that Defendant FedEx Corporation intends to file its own Motion to Dismiss. The Court's docket does not indicate, and FedEx Office is not aware, that either of the other two Defendants referred to in the Amended Complaint—Michael Doiron and "Eric 'Doe'"—have been served with process in the action.

**<u>Factual Background</u>**[2]

On an unspecified date, Plaintiffs Bisasor and Anderson were "induced by FedEx" to register for personal and business accounts. *See* Amended Complaint (ECF Doc. No.25) at ¶ 38. In the alleged "contract," FedEx promised that '***your account number gives you convenient access to the quality services you need. Use your account number for purchases online or at more than 1,900 FedEx Office locations, including hundreds that operate 24 hours a day, 7 days a week***." *See id.* (emphasis in Amended Complaint). According to the Amended Complaint, "FedEx also promised further added benefits" such as, "**registering preferences and contact information, saving documents to FedEx online platform, tracking orders and re-orders, opting to receive further promotions/updates, earn MyFedEx Rewards.**" *See id.* at ¶ 39 (emphasis in Amended Complaint).

On or about February 4, 2019, Bisasor allegedly visited a FedEx Office store located at 187 Dartmouth St., Boston, MA 02116, to purchase printing, copying, and shipping services. *See* Amended Complaint (ECF Doc. No. 25), at ¶¶ 43, 47. Bisasor was one of two customers present in the store at the time; the other customer was, according to the Complaint, a white male. *See id.* at ¶ 44. While Bisasor completed his copying project, an employee of the FedEx Office store (referred to in the Amended Complaint as "Eric 'Doe,'" and referred to below as "Doe") asked the white customer whether he needed assistance. *See id.* at ¶ 45. Doe then approached Bisasor and told him that he was not allowed to loiter in the store and, therefore, had to leave. *See id.* at ¶ 46. Bisasor explained to Doe that he was not homeless, that he was working on a large project, and that he was

---

[2] In an effort to provide the Court with the factual background for Defendants' Motion, certain allegations made in the Amended Complaint are recited here and below. For purposes of this Motion only, Defendants assume the truth of those allegations. The recitation of those allegations here is not, however, a concession or admission that Plaintiffs' allegations are true or meritorious, and it should not be understood as an acceptance of their veracity for any other purpose.

there to purchase printing, copying, and shipping services in connection with that project. *See id.* at ¶47. Bisasor then "raised concerns to Doe directly, that Doe was discriminating against [Bisasor] because of his race." *See id.* at ¶ 48. Doe, according to the Complaint, "was non-responsive to [Bisasor]'s concerns, and visibly became upset and agitated, and then walked off." *See id.* Thereafter, Bisasor alleges, Doe "engaged in a series of retaliatory and hostile acts intended to drive the plaintiff out of the store." *See id.* at ¶ 49.[3]

Bisasor returned to the same FedEx Office store on February 5, 2019 (in the evening) and stayed there through the early morning of February 6, 2019 "to complete the large printing and copying project that [he] had been working on." *See* Amended Complaint (ECF Doc. No. 25) at ¶ 50. While Bisasor (and possibly Anderson) were in the FedEx Office store on February 5 and 6, 2019, Doe allegedly (1) turned the temperature down in the store, (2) ran the vacuum cleaner and left it unattended near Bisasor, and (3) cleaned the cubicle area near where Plaintiffs "were working on their printing/copying project." *See id.* at ¶¶ 49(a)-(c). In addition, Doe allegedly refused to assist Plaintiffs with the copying machine and "engaged in other passive-aggressive and uncooperative behavior." *Id.* at ¶ 49(e). Finally, as Bisasor was leaving the FedEx Office store with his files, Doe allegedly "hurled hostile expletives at [Bisasor] and also called Bisasor extremely offensive derogatory slurs and discriminatory epithets,"[4] and then (once Bisasor had left) locked the door, thus "preventing [Bisasor] from re-entering the store while [he] was loading his vehicle and while in the process of leaving." *See id.* at ¶¶ 53, 55. Subsequently, Bisasor allegedly contacted "FedEx's

---

[3] It is unclear from Paragraph 49 of the Complaint what conduct was allegedly directed at which Plaintiff, in particular because Bisasor alleges that only he and the white customer were present in the store on February 4, 2019, *see* Amended Complaint at ¶ 43, but also alleges that the subsequent "retaliatory and hostile acts" were directed at both Plaintiffs. *See* Amended Complaint, at ¶¶ 49(a)-(d) (referring to "Plaintiffs" and not "Plaintiff").

[4] Bisasor omits the substance of Doe's alleged statements from his Complaint. *See* Complaint (ECF Doc. No. 1-1) at ¶¶ 80-81, 85.

corporate office" and "the local FedEx store" to complain about Doe's alleged conduct; "on information and belief," however "the FedEx corporate office," the store, and the store manager took no action and did not impose discipline on Doe. *See id.* at ¶¶ 57-58. Thereafter, "FedEx" allegedly engaged in a "deliberate pattern of concealing the identity of the offending employee." *See id*. at ¶¶ 60-61.

### **Procedural Background**

On or about May 19, 2023, Bisasor filed this action in the Superior Court of Massachusetts, County of Suffolk. *See* Complaint (ECF No. 1-1). In his Complaint, Bisasor asserted eight purported causes of action against FedEx Office, FedEx Corporation and Doe, as follows: violation of 42 U.S.C., § 1981 (Count 1); breach of contract (Count 2); breach of implied contract (Count 3); breach of the covenant of good faith and fair dealing (Count 4); unjust enrichment (Count 5) intentional infliction of emotional distress (Count 6); violation of the Massachusetts Equal Rights Act (Count 7); and violation of the Massachusetts Public Accommodation Law (Count 8). *See id.* at ¶¶ 143-298. On January 23, 2026—after an initial dismissal (later vacated) for failure to timely serve process on the Defendants or Doe, and several extensions of the Superior Court's deadline for completing service of process, Bisasor caused process to be served on FedEx Office through its agent for service of process. On February 12, 2026, FedEx Office removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441(a), and 1446. *See* Notice of Removal (ECF Doc. No. 1) at 1-2. On February 19, 2026, FedEx Office and FedEx Corporation filed a Motion to Dismiss the original Complaint. *See* ECF Doc. Nos. 9-11.

On March 12, 2026, Bisasor and Anderson filed the Amended Complaint. *See* ECF Doc. No. 25.[5] In addition to adding Anderson as a Plaintiff and Doiron as a Defendant, the Amended

---

[5] Bisasor had previously requested and received from the Court an extension of his deadline for responding to the Motion to Dismiss, from March 5, 2026, to April 20, 2026. *See* ECF Doc. Nos. 17-18.

Complaint removed Bisasor's Section 1981 claim and added claims for defamation (Count VI); assault (Count VII); battery (Count VIII); violation of M.G.L. c. 93A (Count IX); and negligence and negligent hiring, training, supervision, and retention (Count X). *See id.* at ¶¶ 77-138. Plaintiffs also filed, on March 16, 2026, a Motion to Remand this action to Suffolk County Superior Court. *See* ECF Doc. No. 30.

### **Legal Standard**

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Argueta v. City of Revere*, Civil Action No. 09-10268-RGS, 2009 WL 2462622, at *1 (D. Mass Aug 11, 2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 557, 559 (2007)); *see Morales-Cruz v. University of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) ("Plausibility is the touchstone by which the sufficiency of the complaint is gauged."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint does not "suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombley*, 550 U.S. at 555, 557).

When applying the plausibility standard, the Court "first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz*, 676 F.3d at 224. The factual allegations that remain "must be enough to raise a right of relief above the speculative level"—and if those allegations are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Twombly*, 550 U.S. at 555, *Morales-Cruz*, 676 F.3d at 224 (quoting *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)). A motion to dismiss under rule 12(b)(6) is an appropriate vehicle for raising a statute of limitations defense. *See, e.g.*, *Ora Catering, Inc. v. Northland Ins. Co.*, 57 F. Supp. 3d 102, 107; *see also Holder*

*v. Boston Police Dep't*, Civil Action No. 20-10656-RGS, 2020 WL 2747855, at *1 n.2 (D. Mass. May 27, 2020) (holding that "[t]he statute of limitations is an affirmative defense and not a jurisdictional bar, hence it is properly analyzed under Rule 12(b)(6) and not Rule 12(b)(1)"); *accord Epstein v. Seigel*, 396 Mass. 278, 279 (1985).

## Argument

**I.     All of the claims for relief that Plaintiffs have asserted in the Amended Complaint are barred by the applicable statutes of limitations.**

As noted above, Plaintiffs assert twelve alleged causes of action against FedEx Office in the Amended Complaint. They have failed to state a claim on which relief can be granted with respect to any of those causes of action, however, because they failed to assert them within the time required by the applicable statutes of limitations. Accordingly, all twelve causes of action must be dismissed pursuant to Rule 12(b)(6). *See U.S. ex rel. Health Outcomes Techs. v. Hallmark Health Sys., Inc.*, 409 F. Supp. 2d 43, 46 (D. Mass. 2006) (holding that an order of dismissal for failure to state a claim predicated on the statute of limitations is "entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred.").

**A.  Plaintiffs' claims for breach of contract, breach of the covenant of good faith and fair dealing, and related equitable claims in Counts 1-3 and 12 of the Complaint are untimely.**

Plaintiffs' claims for breach of contract (Count 1), promissory estoppel (Count 2), breach of the covenant of good faith and fair dealing (Count 3), and unjust enrichment (Count 12) are time-barred. In Massachusetts, "[a]ctions of contract, other than those to recover for personal injuries" are generally governed by a six-year statute of limitations. M.G.L. c. 260, § 2. However, the shorter three-year statutory period for tort claims applies to contract claims, like Plaintiffs', where the gravamen of the complaint is that the defendant caused the plaintiffs a personal injury. *Seifer v. Government Employees Ins. Co.*, 530 F. Supp. 3d 123, 126 (D. Mass 2021) (citing

6

*Callahan v. Wells Fargo & Co.*, 747 F. Supp. 2d 247, 252 (D. Mass. 2010)), *aff'd*, No. 21-1371, 2022 WL 1538276 (1st Cir. May 13, 2022). Claims for unjust enrichment are similarly subject to either the six-year contract or three-year tort statute of limitations, depending on whether the "essential nature" of the claim lies in contract or in tort. *See Sentinel Prods. Corp. v. Mobile Chem. Co.,* No. CIV. A. 98-11782-PBS, 2001 WL 92272, at *23 (D. Mass. Jan. 17, 2001) (*citing Desmond v. Moffie* 375 F.2d 742, 743 (1st Cir.1967).

To determine whether the three-year or six-year limitations period applies to such claims, courts look to the "essential nature" of the plaintiff's claim. *See id*. In this case, Plaintiffs' allegations and alleged damages focus on alleged harms related to emotional distress, and to other personal injury damages such as stress, loss of sleep, emotional upset, and anxiety purportedly caused by Defendants' alleged conduct. These alleged harms clearly are personal injuries within the meaning of Mass. G.L. c. 260, § 2A, and the three-year limitations period therefore applies. *See Ingalls v. Adams Cmty. Bank*, No. CV 19-30006-MGM, 2020 WL 3722317, at *9 (D. Mass. Mar. 25, 2020) (applying three-year limitations period to plaintiff's breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment claims where plaintiff sought compensatory damages for the humiliation, emotional distress, damage to reputation and other damages caused by the defendants' conduct); *see also Seifer*, 530 F. Supp. 3d at 126 (applying three-year statute of limitations to breach of contract claim where plaintiff's alleged damages focused on pain, suffering and inability to pursue her profession because of said suffering). In addition, where (as here) the Plaintiffs' claims sounding variously in tort and contract are premised on a common factual nucleus, courts have made clear that limitation statutes should apply equally to similar facts regardless of the form of the proceeding. *See, e.g.*, *Ingalls*, 2020 WL 3722317, at *9.

Accordingly, the limitations period that applies to Plaintiffs' claims for breach of contract (Count 1); promissory estoppel (Count 2); breach of the covenant of good faith and fair dealing (Count 3); and unjust enrichment (Count 12) expired on February 6, 2022, more than one year before Bisasor filed the original Complaint, and more than four years before Anderson asserted those claims for the first time in the Amended Complaint. Bisasor and Anderson inexcusably allowed their claims to "wither on the vine" and, as a result, they must be dismissed. *Young v. Lepone*, 305 F.3d 1, 14 (1st Cir. 2002).

**B.  Plaintiffs' statutory claims, in Counts 4 and 11 of the Amended Complaint, are untimely.**

Like their contract claims, Plaintiffs' statutory claims are time-barred under the applicable statute of limitations. Specifically, Plaintiffs have asserted claims under the Massachusetts Equal Rights Act and Massachusetts Public Accommodation Law, both of which are subject to a three-year limitations period, which began running on February 6, 2019, and expired on February 6, 2022—more than a year before Bisasor filed his Complaint and more than four years before Anderson asserted those claims in the Amended Complaint. *See* Mass. G.L. c. 260, § 5B. Because Bisasor filed the original Complaint well outside of the applicable limitations periods that apply to his state statutory claims, those claims (in Counts 4 and 11 of the Amended Complaint) must be dismissed for failure to state a claim upon which relief can be granted as to Bisasor and as to Anderson, who waited more than seven years to assert them.

**C.  Plaintiffs' tort claims in Counts 5-8 and 10 of the Amended Complaint are also untimely and must be dismissed.**

In the Amended Complaint, Plaintiffs assert claims for intentional infliction of emotional distress (Count 5); defamation (Count 6); assault (Count VII); battery (Count 8); and negligence and negligent hiring, training, supervision and retention (Count 10). Each of these claims must be dismissed as untimely.

8

Under Massachusetts law, claims for intentional infliction of emotional distress are subject to the three-year statute of limitations for tort claims set forth under Mass. Gen. Laws ch. 260, § 2A. *See, e.g.*, *Shepardson v. American Family Life Assurance Co. of Columbus*, 525 F. Supp. 3d 210, 215 (D. Mass. 2021) (citing Mass. G.L. c. 260, § 2A and *Pagliuca v. City of Boston*, 35 Mass. App. Ct. 820, 824 (1994)). According to the Amended Complaint, Plaintiffs' claim for intentional infliction of emotional distress is based on alleged "injuries" that "were the direct and proximate result" of Doe's allegedly "extreme" and outrageous conduct towards Bisasor during the period from February 4-6, 2019. *See* Amended Complaint (ECF Doc. No. 25) at ¶ 103; *see also Shepardson*, 525 F. Supp. 3d at 215-16 (holding that intentional infliction of emotional distress claim accrues "'[w]hen an injury becomes manifest'") (quoting *Pagliuca*, 35 Mass. App. Ct. at 824). Thus, as with his contract and state statutory claims, Bisasor filed his May 19, 2023 Complaint more than a year after the limitations period had expired on his claims of intentional infliction of emotional distress, and Anderson asserted her claim—for the first time—more than three years after the limitations period expired.

Plaintiffs' other tort claims—for defamation, assault, battery, and negligence and negligent hiring, training, supervision and retention—are also governed by a three-year statute of limitations. *See, e.g.*, *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20, 24 (1st Cir. 1997) (limitations period for negligent hiring and supervision claims is three years); *Ratchford v. Orange Lantern, Inc.*, 778 F. Supp. 3d 349 (D. Mass. 2025) (limitations period for defamation claims is three years); *Bassett v. Jensen*, 459 F. Supp. 3d 293, 313 (D. Mass. 2020) (limitations period for negligence claims is three years); *Cayo v. Fitzpatrick*, 95 F. Supp. 3d 8, 11-12 (D. Mass. 2015) (limitations period for assault and battery claims is three years). According to the Amended Complaint, those claims also accrued during the period from February 4-6, 2019, and the limitations period accordingly expired with

9

respect to each of them by February 6, 2022—more than one year before Bisasor filed his original

Complaint.

### D. Plaintiffs' claim for violation of Chapter 93A is both untimely and procedurally improper.

Plaintiffs' claims for violation of Mass. G.L. c. 93A, §9 ("Chapter 93A") must also be

dismissed, but for slightly different reasons. A claim under Chapter 93A has a four-year limitations

period, see G. L. c. 260, § 5A, and accrues when the plaintiff knew or should have known of

appreciable harm resulting from the defendant's actions. *Schwartz v. Travelers Indemnity Co.,* 50

Mass. App. Ct. 672, 678 (2001). In a conclusory fashion, the Amended Complaint states that

Plaintiffs' Chapter 93A claims are premised on "FedEx Defendants" alleged "unfair and deceptive

acts and practices," including:

> "(a) publishing anti-discrimination and customer service policies they had no intention of enforcing; (b) inducing customers like Plaintiffs to patronize FedEx stores based on false promises; (c) tolerating and concealing racially discriminatory conduct by employees; (d) refusing to investigate complaints of discrimination; (e) refusing to identify the offending employee despite a court order authorizing discovery; and (f) engaging in a pattern of deception designed to shield themselves from accountability."

Amended Complaint (ECF Doc. No. 25), ¶122. These allegations all stem from the conduct that

Plaintiffs claim occurred in February 2019. Accordingly, Plaintiffs' cause of action accrued in

February 2019 and expired in February 2023, several months before Bisasor filed his May 2023

action and more than three years before Anderson asserted her Chapter 93A claim for the first time.

Neither Bisasor nor Anderson argue (nor could they) that the statute of limitations should be tolled

because they did not or could not have reasonably known that they may have been harmed by the

alleged misrepresentation. *See Taygeta Corp. v. Varian Assocs., Inc..* 436 Mass. 217, 229 (2002)

(statute of limitations on tort claim may be tolled "until a plaintiff knows, or reasonably should have

10

known, that it has been harmed or may have been harmed by the defendant's conduct"). Thus, dismissal of Plaintiffs' Chapter 93A claims should be dismissed because they are untimely.

In addition, Plaintiffs' Chapter 93A claims should be dismissed because they failed to comply with its requirements. Chapter 93A makes clear that "[a]t least thirty days prior of any . . . action" under Section 9 of the statute, a claimant must "mail[] or deliver[] to any prospective respondent" a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." *See* Mass. G.L. c. 93A, § 9(3). The demand letter requirement is not merely a procedural nicety, but, rather, a prerequisite to suit, designed to encourage negotiation and settlement and as a control on the amount of damages. *See McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 217-18 (1st Cir. 2012). Here, Bisasor alleges, "Plaintiffs sent a demand letter as required by Mass. Gen. Laws ch. 93A, § 9(3), prior to filing this amended complaint." Amended Complaint (ECF Doc. No. 25), ¶ 123. However, Plaintiffs fail to acknowledge that (1) Bisasor transmitted the demand letter nearly three years *after* he initiated the instant action, and on the *same day* that he filed and served the Amended Complaint, and (2) the demand letter does not identify Anderson as a Claimant. *See* Bisasor Ch. 93A Demand Letter.[6] Plaintiffs' failure to satisfy a condition precedent to bringing an action based upon 93A, § 9 precludes them from raising their claim now and, therefore, also warrants dismissal of their Chapter 93A claim.

---

[6] A true and correct copy of the Demand Letter is attached as Exhibit 1 to the Declaration of Patrick M. Curran, Jr., filed contemporaneously with this Motion. The Court may rely on the Demand Letter in ruling on this Motion, without converting it into a Motion for Summary Judgment, because the allegations of the Amended Complaint are linked to and rely on that document. *See, e.g.*, *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (holding that when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding on a motion to dismiss under Rule 12(b)(6)").

II.   **The Amended Complaint improperly adds Anderson as a Plaintiff and, therefore, Anderson's claims should be dismissed.**

The Amended Complaint purports to add Anderson as a Plaintiff, notwithstanding the fact that the statutes of limitations on all of her claims have expired. *See supra*, Section I. Though unclear from the Amended Complaint, Bisasor appears to add Anderson as a Plaintiff pursuant to Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, which governs when an amended pleading "relates back" to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). As detailed below, Anderson's stale claims cannot be resuscitated through Fed. R. Civ. P. 15(c)(1)(C).

Rule 15 provides, in relevant part,

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> . . .
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(c).[7] First, as detailed in Section I above, each of Bisasor's claims in his original Complaint (ECF Doc. No. 1-1) and his Amended Complaint (ECF Doc. No. 25) are

---

[7] Even though the text of rule discusses changes in the identity of defendants, the rule can be applied to amendments that change the identity of plaintiffs. *Rizzuti v. Cappabianca*, 791 F. Supp. 3d 270, 295 (D. Mass. 2025).

untimely. Thus, even if this Court were to afford Anderson the benefit of the May 2023 filing date, her claims would remain stale. Anderson's attempt to "relate back" to Bisasor's May 2023 Complaint fails for a second reason: Bisasor and Anderson made the deliberate choice not to include Anderson as a Plaintiff in the original Complaint. This is the antithesis of making a mistake concerning the proper party's identity. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549, 130 S. Ct. 2485, 2494 (2010) ("[w]e agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity").

The relation back of an amendment changing a party depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend its pleading. *See Krupski*, 560 U.S. at 548 (explaining that Rule 15(c)(1)(C)(ii) asks what the prospective party knew or should have known during the Rule 4(m) period, not what the amending party knew or should have known at the time of filing the original complaint). Bisasor's May 2023 Complaint is replete with references to his "wife," Anderson. Although, the First Circuit has recognized that *pro se* litigants are more likely to make technical and clerical errors, *Rizzuti v. Cappabianca*, 791 F. Supp. 3d 270, 296 (D. Mass. 2025), it would defy logic to characterize the omission of Anderson as a Plaintiff in the May 2023 Complaint as a "technical" or "clerical" error. Rather, given the relationship between Bisasor and Anderson, it is apparent that Anderson would have been aware of her potential claims at the time that Bisasor filed his original Complaint but opted not to do so. Rule 15(c) is not an open invitation to every plaintiff whose claim otherwise would be time-barred to salvage it by joining an earlier-filed action. To allow Anderson to raise her claims for the first time now, seven years after her purported cause of action accrued and nearly three years after Bisasor filed his original Complaint, would vitiate the legal certainty that limitations periods are intended to create.

13

The addition of Anderson as a Plaintiff in this case by means of a simple amendment to the Complaint is also procedurally improper. It is well-established that when a "party to an 'already filed lawsuit' wishes 'to add or drop a party, this is not to be accomplished by simply amending the complaint.'" *Anderson v. Bayview Crematory, LLC*, Civil Action No. 05-11904-RCL, 2007 WL 9797778, at *1 (D. Mass. Sept. 21, 2007) (quoting *South Dakota v. Burlington Northern & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919, 924 (D.S.D. 2003)). Rather, the party must file a motion seeking the Court's leave to add the new party or parties, and the standards for intervention or joinder under the Rules of Civil Procedure apply. *See id.*; *see generally* Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1688 (3d ed.) (recognizing that "[m]ost courts have held . . . that an amendment changing parties requires leave of court even though made at a time when Rule 15 indicates it could be done as of course"). Accordingly, the addition of Anderson (and of Defendant Michael Doiron) by simple amendment of the Complaint is procedurally improper and in violation of the Rules of Civil Procedure.

**III.    Plaintiffs have failed to allege facts sufficient to state a claim on which relief can be granted for breach of contract, or for breach of the covenant of good faith and fair dealing. Thus, even if those claims were not barred by the statute of limitations, they would be subject to dismissal under Rule 12(b)(6).**

To prevail on their claims for breach of contract, Plaintiffs must demonstrate (1) the existence of a valid, binding contract, (2) the terms of which Defendants breached, (3) which breach caused Bisasor and Anderson to suffer damages. *Haglund v. Estee Lauder Companies, Inc.*, 466 F. Supp. 3d 292, 298 (D. Mass. 2020). To survive a motion to dismiss, they must do more than allege, in a conclusory manner, that Defendants breached a contractual duty. *Id.* Instead, they must describe with "substantial certainty," the specific contractual promise that Defendants breached. *Id.* Plaintiffs cannot meet this burden.

14

In the Amended Complaint, Plaintiffs appear to allege that Defendants breached the terms of "contracts" for personal and business accounts, pointing to language allegedly contained in "such contract[s]" stating that "your account number gives you convenient access to the quality services you need. Use your account number for purchases online or at more than 1,900 FedEx Office locations, including hundreds that operate 24 hours a day, 7 days a week," and promising "added benefits" such as "registering preferences and contact information, saving documents to FedEx online platform, tracking orders and re-orders, opting to receive further promotions/updates, earn MyFedEx Rewards." *See* Amended Complaint (ECF Doc. No. 25) at ¶¶ 38-40 (emphasis omitted); *see also id.* at ¶¶ 77-78. However, Plaintiffs do not specifically identify the party to the alleged contract or plead any facts suggesting that Defendants breached any of the terms of such a contract. *See id.* at ¶¶ 1-139. They do not, nor can they, claim that Defendants prevented them from using their account number as provided for in the language they cite. Nor do they allege that Defendants prevented them from registering their preferences, saving their documents, tracking orders, receiving promotions, or earning MyFedEx Rewards. *See id.* Quite simply, Plaintiffs have not alleged any facts suggesting that FedEx Office deprived them any of the contractual benefits provided for in the alleged contract language they cite to.

Apparently recognizing this failing, Plaintiffs seek to manufacture facts to demonstrate a breach of a contractual promise by asserting that Defendants failed to comply with a series of written policies maintained on a website allegedly associated with FedEx Office. *See* Amended Complaint (ECF Doc. No. 25) at ¶¶ 62-67, 79-82. As a preliminary matter, Plaintiffs do not allege that the policies they cite to, such as the "Equal opportunity and anti-harassment policy," even applied to either Anderson or Bisasor as customers. Even if they did, however, Plaintiffs allege no facts indicating that any of those policies were in fact a "contract" between the parties. Specifically, they have made "no presentation of the terms of the contract, its duration," what obligations the contract

15

imposed on each of the parties, "or even when it was formed." *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (affirming the district court's order dismissing plaintiff's breach of contract claim for failure to "state the nature of the contract with any specificity"); *see also Wood v. Bank of Am., N.A.*, Civil Action No. 24-cv-11430-DJC, 2025 WL 894650, at *5-6 (D. Mass. March 24, 2025) (allowing defendant's motion to dismiss plaintiff's claim for breach of a financing agreement where plaintiff had failed to attach a copy of the alleged contract to the complaint or to provide a description of its terms, duration, the obligations is imposed on each of the parties, "'or even when it was formed'") (quoting *Doyle*, 103 F.3d at 195)).

Further, Plaintiffs do not allege any facts suggesting that the personal or business accounts contained any promises or guarantees concerning the application or enforcement of those policies or otherwise sought to incorporate the policies they cite into the four corners of any alleged contract between FedEx Office or Plaintiffs. *See* Amended Complaint (ECF Doc. No. 25) at ¶¶ 1-139. Instead, Plaintiffs simply assert that "Defendants breached this contract by… (d) failing to follow their own anti-discrimination and anti-retaliation policies." *See id.* at ¶ 82.

In sum, Plaintiffs' failure to plead any facts suggesting that FedEx Office breached the terms of any alleged contract associated with their personal or business accounts is fatal to their breach of contract claim and cannot be resuscitated by his bare assertions that select policies are contracts. Accordingly, Plaintiffs' breach of contract claim must also be dismissed for failure to plead facts suggesting a plausible entitlement to relief. *See Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 55 (D. Mass. 2015), *aff'd*, 865 F.3d 1 (1st Cir. 2017) (dismissing claim for breach of contract where the complaint did not actually allege that the contract was breached or that plaintiff had not received the benefit of the bargain).

For similar reasons, Plaintiffs' claim for breach of the covenant of good faith and fair dealing must also be dismissed. A covenant of good faith and fair dealing is implied in every contract.

*Shaulis v. Nordstrom, Inc.*, 120 F. Supp. 3d 40, 54 (D. Mass. 2015). To state a claim for breach of the covenant of good faith and fair dealing, a complaint need not allege the breach of an express contract term. *See Speakman v. Allmerica Financial Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005). It must, however, allege facts showing that the defendant acted in bad faith to unfairly leverage contract terms for undue economic advantage. *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 389 (D. Mass. 2012). The scope of the covenant is limited, furthermore, and it may not be invoked to create rights or benefits not contemplated by a contract or contractual relationship. *See Shaulis*, 120 F. Supp. 3d at 54. And under Massachusetts law, a claim for breach of the implied covenant of good faith and fair dealing can lie only where there exists a binding contract. *Haglund v. Estee Lauder Companies, Inc.*, 466 F. Supp. 3d 292, 300 (D. Mass. 2020) (dismissing breach of covenant of good faith and fair dealing claim where no contract existed between the parties); *Mass. Eye & Ear Inf. v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (holding that if "no contract exists, there can be no derivative implied covenant of good faith and fair dealing"); *see also Doyle*, 103 F.3d at 195 (holding that "[c]onclusory statements" that "'Hasbro and its executives failed to meet their contractual requirement,' are insufficient to satisfy the pleading requirements.").

Here, there is no allegation that FedEx Office acted in bad faith to unfairly leverage contract terms for undue economic advantage; rather, the claim against FedEx Office is predicated upon its purported failure to abide by the alleged policies to which Plaintiffs refer in the Amended Complaint. Accordingly, Plaintiffs' claim that Defendants breached the covenant of good faith and fair dealing must also be dismissed for failure to state a claim on which relief can be granted.

IV.    **Plaintiffs have failed to state a claim upon which relief can be granted for assault or battery.**

To state a viable claim for civil assault under Massachusetts law, Plaintiffs must allege facts showing that the Defendants (1) acted with the intent to cause a harmful or offensive contact with a

17

plaintiff, or acted to create an imminent apprehension of such a contact, and (2) that they were thereby put in such imminent apprehension. *See El Khoury v. Goulding*, No. 21-CV-11036-LTS, 2023 WL 2384083, at *18 (D. Mass. Feb. 10, 2023), *report and recommendation adopted*, No. CV 21-11036-LTS, 2023 WL 2384106 (D. Mass. Feb. 28, 2023). "The intent required [for civil assault] is the intent to make the victim apprehensive of immediate physical harm." *Diaz v. Devlin*, No. CV 16-40039-TSH, 2019 WL 4804803, at *6 (D. Mass. Sept. 30, 2019).

In a boilerplate manner, Bisasor and Anderson allege that "Doe's conduct, including his loud, angry, intimidating, and threatening manner while hurling racial slurs and epithets" "placed Plaintiffs in reasonable apprehension of imminent harmful or offensive contact." Amended Complaint (ECF Doc. No. 25), ¶ 114. However, the crux of Plaintiffs' claims is that Doe "hurled" racial slurs and epithets. In other words, the "intimidating" and "threatening" behavior Doe allegedly engaged in was words alone, without any insinuation that he intended or threatened to physically harm either Anderson or Bisasor. This is insufficient to state a claim for assault. *Compare with Ginsberg v. Blacker*, 67 Mass. App. Ct. 139, 144 (2006) ("courts in other jurisdictions have held that shouting angrily at a person and raising a hand (or shaking a fist) in that person's face constitutes an actionable assault insofar as it reflected a credible threat to strike the other person.").

For similar reasons, Plaintiffs' claims of battery must be dismissed. The tort of battery represents a completed assault—i.e., that the intention of the defendant to cause a harmful or offensive contact resulted, directly or otherwise, in such a harmful or offensive contact. *Diaz v. Devlin*, No. CV 16-40039-TSH, 2019 WL 4804803, at *6 (D. Mass. Sept. 30, 2019). A defendant is subject to liability to another for battery only if (1) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) a harmful contact with the person of the other directly or indirectly results.' *Lund v. Henderson*, 22 F. Supp. 3d 94, 105 (D. Mass. 2014).

Here, Plaintiffs allege that "Doe intentionally made harmful or offensive contact with Plaintiffs' persons by aggressively intruding into their personal workspace, physically moving their belongings, and locking Bisasor out of the store." *See* Amended Complaint (ECF Doc. No. 25) at ¶ 118. They do not, however, allege that Doe made a harmful contact with either Bisasor or Anderson. Instead, citing to *Commonwealth v. Burke*, 390 Mass. 480, 482 (1983), Plaintiffs characterize their unidentified "belongings" as "closely identified" with them, and suggest that Doe's alleged contact with their "belongings" alone is sufficient to give rise to a claim for battery. *See id.* But the SJC in *Burke* did not even address the question whether contact with an object "closely identified with a person's body qualifies as contact with the person," much less rule that it does as Plaintiffs appear to contend. *See Burke*, 390 Mass. at 480-87.[8] In any case, even if contact with "belongings" could give rise to a claim for battery—and it cannot—Plaintiffs have simply alleged that Doe "moved" their belongings and "lock[ed] Bisasor out of the store." *See* Amended Complaint at ¶ 118. Nothing in those allegations, or any others in the Amended Complaint, suggests a "harmful and offensive touching" capable of giving rise to a claim for battery. *See Burke*, 390 Mass. at 482.

**V.    Plaintiffs have failed to state a claim upon which relief can be granted for defamation.**

Under Massachusetts law, defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff." *Yohe v. Nugent*, 321 F.3d 35, 39-40 (1st Cir. 2003). To state a viable defamation claim against FedEx Office, Plaintiffs must allege facts showing (1) that FedEx Office made a statement concerning them to a third party, (2) that the statement could damage Plaintiffs' reputation in the community, (3) that

---

[8] *Burke* was a criminal case in which the defendant had been charged with indecent assault and battery of an individual under the age of fourteen. *See Burke*, 390 Mass. at 480-81. In that context the Court addressed whether consent is an element of the criminal offense of battery. *See id.* at 480-84. It nowhere stated, or even suggested, that contact with a person's "belongings" is sufficient to give rise to a civil cause of action for battery. *See id.* at 480-87.

19

FedEx Office was at fault in making the statement, and (4) that the statement either caused the Plaintiffs economic loss or is actionable without proof of economic loss. *Kaiser v. Kirchick*, 662 F. Supp. 3d 76, 99 (D. Mass. 2023). To be actionable, however, the statement must be one of fact rather than opinion. *Id.* And it is well established that mere "epithets [or] rhetorical hyperbole" do not give rise to a claim for defamation. *Travers v. Shane*, No. 9201489, 1995 WL 809549, at *1 (Mass. Super. July 10, 1995) (*citing Lyons v. Globe Newspaper Co.,* 415 Mass. 258, 266-67 (1993) and *Pritsker v. Brudnoy,* 389 Mass. 776, 778 (1983)).

Here, Plaintiffs do not allege in the Amended Complaint any facts suggesting that any individual made a statement concerning Anderson, much less that FedEx Office made a statement concerning her that could damage her reputation in the community. *See* Amended Complaint at ¶¶ 1-139. As for Bisasor, Plaintiffs allege that "Doe made false, defamatory statements about Bisasor by loudly and publicly accusing Bisasor of being a loitering malingering homeless person who was loitering in the store, and by directing extremely offensive racial slurs and epithets at Bisasor." Amended Complaint (ECF Doc. No. 25), ¶ 108. But these alleged statements by Doe, however objectional, do not as a matter of law constitute defamatory statements, because they are (even as alleged) mere "epithets, rhetorical hyperbole, or pure statements of opinion," for which the cause of action for defamation, under Massachusetts law, "provides no redress." *See Travers*, 1995 WL 809549, at *1 (holding, as a matter of law, that defendant's statement that plaintiff was "'nothing but a fat, fucking, disgusting bitch'" did not give rise to a defamation claim).

## Conclusion

For all of the foregoing reasons, Plaintiffs Andre Bisasor and Natalie Anderson have failed in their Amended Complaint to state a claim on which relief can be granted against FedEx Office. Accordingly, the Amended Complaint and this action should be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and paper copies will be sent by email and by first-class mail, postage prepaid, to those indicated as non-registered participants on March 26, 2026.

*/s/ Patrick M. Curran, Jr.*
Patrick M. Curran, Jr.

21